IRVING, J.,
for the Court.
¶ 1. Shawn Matthew Busby was convicted by a jury of kidnapping and was sentenced by the Desoto County Circuit Court to three years in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals and raises a single issue: whether the court erred in refusing to grant his proposed lesser-included offense instruction for domestic violence. Because we find no error in Busby’s conviction and sentence, we affirm.
FACTS
¶ 2. At the time of the incident in question, Busby was separated from his former wife, Maranda Busby.[1] Maranda had moved out of the marital home and was living in a rental home in Olive Branch, Mississippi. On October 8, 2004, around nine o’clock at night, Maranda had returned to her rental home when Busby confronted her outside the house. According to Maranda, “I turned to go towards my door, and he was right behind me, and the next thing I know, we’re in the living room, and we’re struggling.” Maranda testified that the altercation, which involved Busby placing his hand over her mouth and nose, continued up a hallway. Maranda indicated that Busby was forcing her down the hall toward her bedroom. At some point after they fell, Busby picked Maranda up and carried her to her bedroom door. She testified that she then put her hands on the door frame in an attempt to prevent Busby from entering the bedroom.
¶ 8. Maranda stated that after she put her hands on the door to prevent Busby from taking her into the bedroom, Busby then “picked me up and put me on the floor face first, and ... sat on my thighs, and ... pulled my hands behind my back and put handcuffs on me-” The handcuffs were apparently toy handcuffs that belonged to Maranda and Busby’s children. Maranda testified that she began pleading with Busby not to hurt her, and he replied: “I’ve lost everything. I’ve lost my house. I’ve lost my kids. I’ve lost my wife. Why can’t I hurt you?” At that time, Maranda promised to tell Busby whatever he wanted and also promised that she would halt her divorce proceedings and go to counseling. After Maranda stated this, Busby uncuffed her and allowed her to sit up. Shortly thereafter, the phone rang, but stopped ringing before Maranda could answer it. Maranda testified that she was expecting a call from her mother, and that she thought it was her mother who was attempting to call her. Maranda and Busby then went to the living room, where Maranda attempted to get her phone from Busby, who had taken it when he entered the house. Maranda testified that she got the phone, but Busby took it from her and threw it in a chair. Maranda convinced Busby that she needed to call her mother back, and he eventually let her do so. Maranda testified that her mother knew something was wrong due to Maranda’s emotional state during the phone call. When her mother asked if she *1114 needed to call the police, Maranda told her yes.
¶ 4. Thereafter, Busby and Maranda argued as to whether he could simply leave her in the house. Busby indicated that he was unwilling to do so because she would call the police if he did so. Maranda testified that Busby sat between her and the door such that she “couldn’t go anywhere.” A short time later, police arrived at the house. Busby informed Maranda, “You better not f-ing tell them that I’m in here.” The police, however, asked Maranda to exit the house. After she did so, she informed the police about Busby’s presence in the house and the fact that he had handcuffed her. She showed the officer the marks on her wrists that the handcuffs had left. The officer called for backup and Busby was eventually removed from the house and arrested. Maranda testified that, throughout the ordeal, she was alternately afraid that Busby was either going to rape her or murder her.
¶ 5. Busby’s account of events varies from Maranda’s. According to the statement that Busby gave to police at the time of the incident, he went to the house only to talk to Maranda, but “she was hysterical. So I put my hand over her mouth and told her to please calm down.” Busby admitted that a physical struggle occurred, and that he had handcuffed Maranda and had sat on her legs, but he testified that he quickly let her up and that they then talked. Busby indicated in his statement that he was about to leave the house when the police arrived at the scene. At trial, Busby testified that Maranda had told him to come over to the house to talk about things that night. Busby further testified that they began arguing once he was there and that he restrained Maranda because she was hitting him and yelling. Busby indicated that the handcuffs were only on Maranda for a very short period of time. Busby also testified about a prior incident where he believes that Maranda attempted to get him into trouble with law enforcement. During cross-examination, Busby admitted that there was nothing in his statement given the night of the incident to indicate that Maranda was hitting him. Busby also admitted during cross-examination that he is six-foot-seven and weighs around 275 pounds.
¶ 6. Busby was indicted on two separate counts arising from the incident with Mar-anda — one for kidnapping, and one for domestic violence. At the close of the State’s case, Busby’s attorney moved to dismiss both counts. Specifically, Busby’s attorney contended that the domestic violence count was a lesser-included offense of kidnapping, and that the State “needs to elect which case they want to proceed on in this.” The court granted the motion to dismiss as to the assault charge, noting: “the actions that would otherwise constitute a simple assault are consumed in the kidnapping charge in that all the actions alleged were, for lack of better terminology, part and parcel of the actions which Mr. Busby took, from the evidence, to commit the crime of kidnapping.”
¶ 7. Additional facts, if necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. Busby’s sole issue on appeal is whether the court should have granted his proposed jury instruction on simple assault/domestic violence. We note at the outset that our analysis of this issue is muddied by inconsistent rulings from the court below. Although the court refused to grant Busby his proposed instruction, *1115 the court had already found that domestic violence was a lesser-included offense of Busby’s kidnapping charge when it dismissed count II of the indictment on that ground. We find that the court was in error in doing so, as we explain below.
¶ 9. Mississippi Code Annotated section 97-3-7(3) (Rev.2006) details the crime of domestic violence: “A person is guilty of simple domestic violence who commits simple assault as described in subsection (1) of this section against ... a current or former spouse....” Subsection one of section 97-3-7 reads in part:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm....
¶ 10. Kidnapping is prohibited by Mississippi Code Annotated section 97-3-53 (Rev.2006), which states: “Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will.... ” The Mississippi Supreme Court has stated that asportation is not an element of kidnapping in Mississippi: “[Section] 97-3-53 ‘does not require any allegation of transportation of the victim.’ ...” Holly v. State, 671 So.2d 32, 43 (Miss.1996) (quoting Carr v. State, 655 So.2d 824, 849 (Miss.1995)).
¶ 11. The Mississippi Supreme Court has held that:
the “essential elements of a lesser-included offense are among the elements of the superior offense.” State v. Shaw, 880 So.2d 296, 301(¶ 18) (Miss.2004). Stated differently, if an accused is guilty of the offense for which he was indicted, the accused is also guilty of any crime considered to be a lesser-included offense.
Smith v. State, 907 So.2d 292, 295(¶ 16) (Miss.2005) (citing Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)). Therefore, domestic violence is not a lesser-included offense of kidnapping, as the elements of domestic violence are not among the elements of kidnapping. Indeed, the trial court was incorrect in dismissing count II of Busby’s indictment, as the State could validly have prosecuted Busby both for kidnapping and for domestic violence. The facts in this case support both, and the two are independent crimes with distinct elements. However, the court’s error was also clearly in Busby’s favor.
¶ 12. “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Chandler v. State, 946 So.2d 355, 360(¶ 21) (Miss.2006) (quoting Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004)). Regardless of any error on the part of the trial court in interpreting domestic violence as a lesser-included offense of kidnapping, Busby was not entitled to his lesser-included offense instruction because domestic violence is not a lesser-included offense of kidnapping. Therefore, we find no error in the denial of Busby’s proposed instruction.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUN *1116 TY OF CONVICTION OF KIDNAPPING AND SENTENCE OF A TERM OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Busby and Maranda were divorced prior to the trial in this case.